**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

BARRY CHATZ, U.S. TRUSTEE,            )
                                                        )
              Plaintiff,            )
                                                        )
      vs.                                       )    CAUSE NO. 2:20-CV-377-PPS
                                                        )
O'ROURKE & MOODY LLP, *et al.*,       )
                                                        )
           Defendants.            )

## <u>OPINION AND ORDER</u>

This case stems from legal advice given by attorney Michael Moody through his

law firm, O'Rourke & Moody, to New City Auto Group when it was trying to purchase

a Nissan dealership in Northwest Indiana.  The deal went south when New City didn't

have sufficient finances, and New City ended up in bankruptcy.  The liquidating

bankruptcy trustee now blames Moody and his firm for a different lawyer's late filing

of New City's bankruptcy which prevented New City from getting any relief from the

dealership contract under the automatic stay.  In addition, Plaintiff claims another

defendant (Amy Lokken) was unjustly enriched when she received payments while

working within the consulting structure operated by yet another co-defendant, Terry

Gaouette. (Gaouette is an accountant on New City's team who is not a part of the

pending motions for summary judgment).

Presently before me are two motions for summary judgment.  The first is filed by

Michael Moody and his law firm, O'Rourke and Moody (the "Moody Defendants"),

and the second by defendant Amy Lokken.  [DE 55, 58.]  For the reasons detailed below,

both of these motions will be granted.  Plaintiff lacks sufficient expert testimony to support its claim that Moody and his law firm were negligent.  Additionally, causation is lacking.  As to defendant Lokken, there are insufficient facts supporting Plaintiff's claims against her.

## Factual Background

First, I have to note that in response to the Moody Defendants statement of facts, Plaintiff responds to paragraph 16 and 24 with "??" and number 35 with "admit and deny." [DE 65 at 6, 7.]  What's more, there are also multiple statements of fact that Plaintiff denies, but fails to cite evidence in support of the denial.  Local Rule 56-1(b)(2)(c) requires "a citation to evidence supporting each dispute of fact."  These facts are therefore deemed admitted.  *See Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion.").

New City originally brought this claim as an adversary case within its Chapter 11 reorganization proceedings. [*See* DE 17-1, Bankr. Compl.]  After the withdrawal of the bankruptcy reference in 2020, for reasons I do not understand, this case laid fallow for more than three years.  It was finally brought back to life on my prompting. [DE 9.]  Thereafter, on July 22, 2024, I entered an order denying the Moody Defendants' motion to dismiss, and granting the plaintiff at the time (New City Auto Group, Inc.), the ability to file an amended complaint naming the correct plaintiff (the Liquidating Trustee). [DE

21.]

Let's first look at an overview of the case before addressing the specific facts relating to the moving defendants.  In summary, New City alleges its shareholders — Michael Helmstetter, Benitta Berke, and Steven Dobrofsky — created New City Auto Group, Inc., to purchase a Nissan dealership in Northwest Indiana. [Am. Compl., DE 27, at 3.]  New City did in fact sign a franchise agreement to buy a Nissan dealership in Schererville (which was previously known as Napleton Nissan).

As noted above, New City has sued several defendants  – O'Rourke & Moody (a law firm), Michael Moody (a lawyer), Gaouette & Associates (an accounting and consulting firm), Terry Gaouette (a CPA), Crock & Associates (which provided services to Gaouette), and Amy Lokken (who provided services to Gaouette). [*Id.* at 2-3.]  New City engaged the Defendants (with the exception of Lokken who did not have a direct contract with New City) to assist in obtaining financing, including floor plan financing, for the operation of the automotive dealership. [*Id.* at 5.]  In an overarching manner, New City claims the Defendants breached their duties by billing for services that weren't rendered, filing documents to change New City from a corporation to a limited liability company without its consent, and opening a bank account without approval or authority.

Let's now concentrate on the facts relating to the summary judgment motion filed by the Moody Defendants.  Count IV of the amended complaint alleges that Moody billed for and received payment for services not rendered; received payment for

3

work beyond the scope of work agreed to; failed to properly advise New City that a Chapter 11 bankruptcy proceeding should be filed to preserve its assets; failed to advise New City that Gaouette had opened a bank account and was paying bills for professional services therefrom without New City's knowledge or consent; and advised New City to close on the purchase of the dealership in Northwest Indiana without first obtaining floor plan financing. [*Id.* at 9-10.]

In its response memorandum, Plaintiff refers to the negligence claim as one for "legal malpractice." [DE 64 at 5.]  The main accusation Plaintiff aims at the Moody defendants is: they "faile[ed] to advise NCN [New City] that certain legal action should be commenced, i.e., a Chapter 11 bankruptcy proceeding in order to preserve its assets including filing a proceeding so that the executory contract with Nissan North America could be accepted and so that Nissan North America could not terminate the franchise over agreement with New City Auto due to the automatic stay which is imposed upon filing a bankruptcy petition." [DE 27 at 10.]  Additionally, the Moody Defendants allegedly failed to advise New City that it needed floor plan financing in place to close the purchase of the dealership.  *Id.*

The franchise agreement was entered into by New City on February 9, 2018. [DE 65 at 5.] A dispute arose less than a month later, when New City couldn't obtain necessary floor plan financing.  *Id.*  New City's shareholder, Michael Helmstetter, knew there was no formal floor plan financing in place at the closing on February 13, 2018. [*Id.* at 6.]  In April and May 2018, Nissan sent New City at least two letters purporting to

4

terminate the franchise agreement, "effective 90 days from receipt" of each letter. [*Id.* at 5.]  When New City shareholder Berke was asked during her deposition if Mr. Moody had explained to her that a floor plan had to be in place, she answered, "yes," and that she knew it had to be in place "[b]efore closing." [*Id.* at 6.]  For his part, Attorney Moody testified that "[t]he idea that I had to tell Mike Helmstetter who has been in this business for 30 some odd years about the needs and the requirements of the floor plan financing is absurd.  He knew it.  He knew it totally.  It was his business.  Ms. Berke had been involved in this business for years.  She knew it.  They didn't need me to tell them that." [*Id.* at 6.]

New City retained another law firm, Fox Rothschild, sometime early to mid-July [DE 65 at 8], and that firm filed the bankruptcy on behalf of New City on July 16, 2018, at 8:12 p.m. *Id.*[1]  Fox Rothschild received a $50,000 retainer prior to the bankruptcy case. *Id.*  The Moody Defendants concede that Michael Moody was an experienced bankruptcy attorney too. [DE 73 at 2.]  While the Plaintiff asserts that Michael Moody made the recommendation to file bankruptcy, the Moody Defendants dispute this. [*Id.* at 4.]  Moody testified during his deposition that after the closing of the transaction he didn't do any more work for New City, because they didn't ask him to do anything after that going forward. [DE 56-4 at 42-43.]

On May 30, 2025, Plaintiff disclosed expert witnesses by way of a joint discovery

---

[1] All parties seem to agree that the Bankruptcy Court determined that July 16, 2018, at 5:00 p.m. was the deadline to file if New City wanted the benefit of the automatic stay as it related to Nissan. [DE 56 at 6-7.]

report as follows:

> 1. Joseph Frank (Bankruptcy expert to testify regarding timing and effect of Bankruptcy filing and contract review and client advising). This disclosure may be supplemented depending upon the discovery responses by Defendants.
> 2. Pat O'Malley (Accountant standard of care and propriety of banking transactions on behalf of clients; damages). This disclosure may be supplemented depending upon the discovery responses by Defendants.
> 3. Gregory J. Jordan (Bankruptcy matters). This disclosure may be supplemented depending upon the discovery responses by Defendants.
> 4. Gordon E. Gouveia (Bankruptcy matters). This disclosure may be supplemented depending upon the discovery responses by Defendants.
> 5. David Doyle (Bankruptcy matters). This disclosure may be supplemented depending upon the discovery responses by Defendants.

[DE 65 at 10; DE 45 at 2.] On June 2, 2025, Plaintiff's counsel e-mailed to clarify "that Jordon [sic.], Gouveia, and Doyle are not expert witnesses." [DE 65 at 10.] Then on August 29, 2025, Plaintiff's counsel e-mailed that the previously disclosed experts were expected to testify as follows:

> 1. It was a breach of the applicable standard of care to fail to advise the Debtor it would be in violation of the Nissan Dealership Agreement by consummating the purchase of the dealership without Floor Plan financing in place in accordance with the terms and conditions of the Agreement.
>
> 2. It was a breach of the applicable standard of care to fail to advise the client that Bankruptcy had to be filed within certain time parameters of the default letter from Nissan to invoke the automatic stay.
>
> 3. A timely filed Bankruptcy filing would have permitted the Debtor to obtain or attempt to obtain floor plan financing and stayed Nissan from terminating the Dealership Agreement.

*Id.*

Turning to the facts involving Defendant Amy Lokken, Plaintiff alleges two

claims against her: one for unjust enrichment (Count V) and one for "civil crime relief" (Count VI). [DE 27 at 11.] Plaintiff alleges Lokken received checks totaling approximately $20,000 which were paid through West Town Bank from the New City account. *Id.* But New City did not hire Lokken to perform any services on its behalf or enter into a contract with her, so she should have to disgorge these funds. *Id.* In regard to the claim for civil crime relief, Plaintiff claims Lokken converted the funds from New City for her own use and benefit, and so it is entitled to treble damages and attorney fees pursuant to I.C. § 34-24-3-1. The complaint is pretty threadbare, but it alleges Lokken "provided unknown services to or for the benefit of Gaouette & Associates and/or Gaouette." [*Id.* at 3.]

### Discussion

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### I. Moody Defendants' Motion for Summary Judgment

The Moody Defendants argue Plaintiff's expert disclosures are "plainly deficient to allow the claims against the Moody Defendants to be heard by a jury." [DE 57 at 3.] In response, Plaintiff argues defendants have waived such an argument because in an e-mail dated August 29, 2025, defense counsel wrote to Plaintiff's counsel, saying "[c]an

we also agree that our retained expert disclosures can be done by way of setting forth their opinions and bases therefore within a Rule 26(a)(2) disclosure document without the requirement that a separate, formal report be submitted?" [DE 65 at 79.]  But aside from the relaxed method the parties agreed upon to disclose expert opinions (skipping tendering a formal written report), under the law, Plaintiff still needs sufficient expert testimony to establish that the Moody Defendants committed legal malpractice.

In Indiana, in order "[t]o prove a legal malpractice claim, a plaintiff must establish: 1) employment of the attorney (duty); 2) failure of the attorney to exercise ordinary skill and knowledge (breach); 3) proximate cause (causation); and 4) loss to the plaintiff (damages)." *Flatow v. Ingalls*, 932 N.E.2d 726, 729 (Ind. Ct. App. 2010) (citing *Thayer v. Vaughan*, 798 N.E.2d 249, 255 (Ind. Ct. App. 2003)).  "[E]xpert testimony is usually required in a legal malpractice action to establish the standard of care by which the defendant attorney's conduct is measured."  *Oxley v. Lenn*, 819 N.E.2d 851, 857 (Ind. Ct. App. 2004).  "The only exception to the rule is when the question is within the common knowledge of the community as a whole or when an attorney's negligence is so grossly apparent that a layperson would have no difficulty in appraising it."  *Storey v. Leonas*, 904 N.E.2d 229, 238 (Ind. Ct. App. 2009) (citing *Hacker v. Holland*, 570 N.E.2d 951, 953 n.2 (Ind. Ct. App. 1991)).

Plaintiff argues this issue is "quite simple," and expert testimony isn't even needed in this case of obvious malpractice. [DE 64 at 5.]  I don't agree.  "While the common knowledge exception is a generally accepted deviation from the requirement

of expert testimony in a legal malpractice case, it is very limited and applies solely in cases of obvious and transparent malpractice." *Barkal v. Gouveia & Assoc.*, 65 N.E.3d 1114, 1122 (Ind. Ct. App. 2016). In *Barkal*, the Court rejected the argument that the common knowledge exception should apply to a claim for Chapter 13 legal malpractice, explaining, "the vast array of federal rules regulating the bankruptcy landscape can be daunting at times, even for a legal professional. The relative wisdom of pursuing relief under Chapter 13 of the Bankruptcy Code versus a different chapter based on the facts presented is certainly not within the 'common knowledge' of the community as a whole and rather requires the knowledge, training, and expertise of an expert in the field." *Id.* at 1122.

In this case, there are allegations of malpractice linked to when New City should have filed bankruptcy, as well as scope of duty issues (when Moody's duty ended and the bankruptcy firm's duty started), and to what degree the Moody Defendants needed to advise its client that was comprised of sophisticated and experienced individuals in the business of buying car franchises and admittedly knew about the requirement of floor plan financing. All of these complicated relationships and issues show that this plainly is *not* a common knowledge exception case, and that expert testimony is essential to present to the fact-finder. *See, e.g., Ball v. Kotter*, 723 F.3d 813, 823-25 (7th Cir. 2013) (finding common knowledge exception not applicable where an expert opinion was required to discuss a complex duty based upon a professional's skill).

Plaintiff cites to cases standing for the proposition that an expert is not necessary

9

if an attorney merely misses a statute of limitation. [DE 64 at 5.]  But that is by no means the only issue that needs to be fleshed out by an expert in this case.  Other things that would need to be explained to the jury include the parameters of filing bankruptcy, the significance and effect of an automatic stay, the specific duties the Moody Defendants owed to their client during the pendency of their retention to help New City purchase the franchise and how they should have advised them about floor plan financing, and whether Defendants billed and received payment for services not rendered.  These are all well beyond the common knowledge of a layperson.

So now that I have established that an expert opinion is necessary for Plaintiff in this case to testify whether the Moody Defendants were negligent and committed malpractice, let's look at whether the testimony of their disclosed experts is sufficient. In a nutshell, the expert testimony is deficient.  The very general parameters Plaintiff set forth in the e-mails about the experts' opinions are inadequate.  Simply concluding it was a breach of the applicable standard of care to fail to advise the client of when bankruptcy must be filed, and concluding a timely filed bankruptcy would have permitted New City to be able to get floor plan financing, is too conclusory and based on no real supporting facts.  *See Wendler & Ezra, P.C. v. American Int'l Group, Inc.*, 521 F.3d 790, 791 (7th Cir. 2008) (quotation omitted) ("We have said over and over that an expert's *ipse dixit* is inadmissible.  An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."); *Vollmert v. Wis. DOT*, 197 F.3d 293, 298 (7th Cir. 1999) (an "expert who supplies nothing but a bottom line supplies nothing

of value to the judicial process, and his naked opinion does not preclude summary

judgment."); *Bourke v. Conger*, 639 F.3d 344, 347-48 (7th Cir. 2011) (excluding expert in

legal malpractice case because his opinion lacked foundation and depth and his report

failed to identify facts supporting its conclusion).

The Plaintiff argues that even if their disclosure was deficient somehow, the

affidavit submitted by Joseph Frank concurrently with their response to the motion for

summary judgment rectifies any alleged deficiency. [DE 64 at 7.]  But that is not true.

Frank's affidavit concludes as follows:

> A competent bankruptcy lawyer preparing to file a chapter 11 bankruptcy case
> would determine the status of any contracts essential to operation of a
> prospective chapter 11 debtor's business (an "Essential Contract").
>
> A competent bankruptcy lawyer who became aware that a prospective chapter
> 11 debtor had received a notice of termination with an upcoming effectiveness
> deadline for termination of an Essential Contract would advise the prospective
> debtor that 11U.S.C. § 362 would prevent effectuation of that termination, at least
> for some period of time, if the bankruptcy petition were filed before the
> termination effectiveness deadline occurred.
>
> A competent bankruptcy practitioner would advise a prospective chapter 11
> debtor that if the bankruptcy petition were filed before effectuation of
> termination of the Essential Contract, the debtor, after filing the bankruptcy
> petition, would have an opportunity to try to resolve any defaults under the
> Essential Contract and assume the Essential Contract as provided for under 11
> U.S.C. § 365 so that the Essential Contract would remain in place during the
> bankruptcy case and after the debtor emerged from bankruptcy.

[DE 65 at 70.]  This affidavit specifically addresses only the duty of a hypothetical

"competent bankruptcy lawyer" - it does nothing to address the actual role of the

Moody defendants, or whether attorney Moody had a duty to counsel New City about

the possibility and timing of filing bankruptcy.  This is of course a huge issue given the

11

retention of a different law firm, Fox Rothschild, as bankruptcy counsel prior to the purported deadline to file the bankruptcy case. So, ultimately, the affidavit of Joseph Frank does nothing to shore up the already deficient expert testimony.

Even setting aside the significant problems with the expert testimony in this case, causation is also lacking. A legal malpractice plaintiff must prove that the underlying result would have been more favorable but for the attorney's negligence. *See, e.g., Shorewood Forest Utils., Inc., v. Welsh*, 237 N.E.3d 1142, 1147 (Ind. Ct. App. 2024). In this case, Plaintiff has not established that it can prove but for the Moody Defendants' alleged conduct, New City would not have lost its capitalization of approximately $3.9 million dollars (and this is their claim for damages). [DE 65 at 14.] New City was obviously having financial woes - there is no evidence it could have obtained a new financing arrangement before filing for bankruptcy, or that it could have cured the existing franchise agreement in bankruptcy if they had filed earlier and had the opportunity to cure the default. There is simply no evidence that the lost capitalization was caused by the Moody Defendants' legal advice.

To the extent Plaintiff argues that attorney Moody caused the damages because he failed to advise the newly-hired bankruptcy firm about when it should file for bankruptcy, there is nothing to support this theory whatsoever. Moody testified during his deposition that after the closing of the transaction he didn't do any more work for New City, because they didn't ask him to do anything after that going forward. [DE 56-4 at 42-43.] All parties agree that prior to the bankruptcy case being filed, New City

12

engaged a different bankruptcy firm. [DE 65 at 9.] And they agree that the shareholders of New City were sophisticated and already knew that floor-plan financing was essential to have at closing (thus to the extent the Moody Defendants failed to advise their clients on this issue, it didn't matter, and it didn't cause any losses).  Moreover, Berke admitted that Moody did tell her she needed floor-plan financing in place before closing. [DE 65 at 6.]  For all of these reasons, Plaintiff has not established that the Moody Defendants actions proximately caused its damages.

## II.    Defendant Lokken's Motion for Summary Judgment

Defendant Amy Lokken has filed her own motion for summary judgment.[2]  Like the Moody Defendants, there is insufficient admissible evidence in the record to establish Plaintiff's claims against her.

In looking at the related facts, there is largely a big question mark as to who Lokken was, who was her employer, and how she really fit into the New City deal.  It seems like some of the defendants in this action, including accountant Gaouette, worked with New City on other car dealership deals.  And it is unclear exactly where Lokken fits into that structure and what she did for New City.

Mr. Dobrofsky, a New City shareholder, had no knowledge of Lokken other than he was told she was a female sales manager. [DE 60 at 1.] Another New City shareholder (Ms. Berke) also had no knowledge of Lokken.  *Id.*  Shareholder

---

[2] Amy Lokken got married and took the name Westermeyer before she was deposed in this case on May 21, 2025. [DE 67 at 52.] For clarity sake, I will continue to refer to her as "Amy Lokken" in this opinion.

13

Helmstetter had no relevant knowledge of Lokken aside from the fact that she was "involved in the Alfa Romeo dealership," he would "see her," and maybe she was Mr. Gaouette's administrative assistance. *Id.* Helmstetter further testified that, with respect to the Indiana dealership and Lokken's involvement in it, "Terry [Gaouette] may have had her do a few things, but, I mean, Amy had no direct involvement with the dealership that I am aware of." [*Id.* at 1-2.] In short, Helmstetter did not know what Lokken did. [*Id.* at 2.] And with respect to her receipt of the $20,000 payment at issue, he testified "its' a hard one to answer" as to whether Lokken had any knowledge she was receiving a check from someone who was allegedly not authorized to issue it. *Id.*

In Plaintiff's statement of additional material facts, it establishes that according to Gaouette, Lokken was an hourly employee paid by Terry Gaouette. [DE 67 at 2.] However, she was actually employed by Momentum Strategic Partners, LLC, an entity that sought financing for projects, and Terry Gaouette was a managing partner for Momentum. [DE 67 at 53.] Lokken herself testified that she "was paid when they would collect fees from their clients" and her compensation was determined "[b]y the amount that was received in fees." *Id.* According to Lokken, Gaouette had the discretion to compensate her. *Id.* She also said her compensation "was very sporadic and inconsistent." [*Id.* at 54.] According to Lokken, she received two checks for $10,000 with Terry Gaouette's signature on them, for compensation for work done on the New City groups. [*Id.* at 57-58.] Lokken testified she did work for New City that entitled her to this compensation - she did "general document management, the preparation of

14

underwriting packages.  [She] had the - - there were licensing tasks that [she] took care of with the Secretary of State."   [*Id.* at 58.]  Lokken believes Terry Gaouette was signing checks for New City because "[t]hat was part of the arrangement that he had with Mike Helmstetter." [*Id.* at 59.]

A claim of unjust enrichment (Count V) requires that "a party who has been unjustly enriched at another's expense to make restitution to the aggrieved party." *Andrew Nemeth Props., LLC v. Panzica*, 271 N.E.3d 1100 (Ind. 2025) (quoting *Reed v. Reid*, 980 N.E.2d 277, 296 (Ind. 2012)).  In other words, "[t]o prevail on a claim for unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust."  *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991).

Plaintiff believes because Lokken received two $10,000 checks from New City, and not from her direct employer, "a reasonable jury could conclude that the two $10,000 payments constituted an unjust benefit derived from Plaintiff's funds." [DE 66 at 6.]  In this case, there is undisputed testimony from Lokken that she did do work for New City and completed professional tasks on its behalf, and she believed Terry Gaouette was signing checks for New City because that was their agreement.  Plaintiff has put forth no evidence whatsoever that Lokken didn't perform that work or services, or that the work was not commensurate with the amount she was paid, or that she was unjustly enriched and it would be inequitable to let her keep the $20,000 she was paid in compensation.  The pivotal concept of unjust enrichment is the occurrence of a wrong

15

or something unjust.  *Savoree v. Indus. Contracting & Erecting, Inc.*, 789 N.E.2d 1013, 1020 (Ind. Ct. App. 2003).  There is simply no evidence that Lokken was wrongfully enriched at the expense of New City.  "Absent a wrong, intervention by equity is inappropriate." *Indianapolis Raceway Park, Inc. v. Curtiss*, 386 N.E.2d 724, 726 (Ind. Ct. App. 1979). Therefore, summary judgment is appropriate.  *See Inlow v. Inlow*, 797 N.E.2d 810, 818-19 (Ind. Ct. App. 2003) (granting summary judgment on claim for unjust enrichment were there was no evidence the defendant was wrongfully enriched).

The claim for civil crime relief (Count VI) fails for the same reason.  Plaintiff brought this claim under the Indiana Crime Victim's Relief Act, Ind. Code § 34-24-3-1. That act provides relief to persons who suffered a pecuniary loss based on violations of the provision of Article 43 of Indiana's Criminal Code (for example, conversion, counterfeiting, forgery, or criminal mischief).  Criminal conversion is committed when a person "knowingly or intentionally exerts unauthorized control over property of another person."  Ind. Code § 35-43-4-3.  There is no evidence at all that Lokken knew that she was not entitled to this money and intentionally kept it.  To the contrary, Lokken's testimony establishes her belief that she was entitled to the payments because she was doing work for New City.

### Conclusion

For the foregoing reasons, Defendants O'Rourke & Moody LLP and Michael Moody's Motion for Summary Judgment [DE 55] is GRANTED, and the sole count against them (Count IV for negligence) is DISMISSED WITH PREJUDICE.

16

Defendant Lokken's Motion for Summary Judgment [DE 58] is also GRANTED, and the counts against her (Count V for unjust enrichment and Count VI for civil crime relief) are DISMISSED WITH PREJUDICE.

This case REMAINS PENDING against Defendants Gaouette and Associates, Terry Gaouette, and Crock & Associates, LLC, on the remaining claims (as these defendants did not move for summary judgment). A trial date and date for the final pretrial conference will be forthcoming.

SO ORDERED.

ENTERED: May 8, 2026.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT